<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

ANTHONY SUBE,                    )
                                 )        Civil Action
            Plaintiff            )        No. 11-cv-05736
                                 )
        vs.                      )
                                 )
CITY OF ALLENTOWN; and           )
CHIEF ROGER MACLEAN              )
                                 )
            Defendants           )

                      *    *    *

APPEARANCES:

        DONALD P. RUSSO, ESQUIRE
            On behalf of Plaintiff

        STEVEN E. HOFFMAN, ESQUIRE
        EDWARD J. EASTERLY, ESQUIRE
            On behalf of Defendants

                      *    *    *

                  **O P I N I O N**

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on Defendants' Motion

to Dismiss and/or Strike Plaintiff's Second Amended Complaint

("Motion to Dismiss/Strike") filed on November 13, 2012.[1]   For

---

[1]        The Motion to Dismiss/Strike (Document 24) was filed together
with Defendants' Brief in Support of Motion to Dismiss and/or Strike Second
Amended Complaint (Document 24-1)("Defendants' Brief"), and Exhibit 1, a copy
of the Agreement Between the City of Allentown and the Fraternal Order of
Police, Queen City Lodge No. 10, [for] 2009, 2010, 2011, [and] 2012
(Document 24-2) ("Collective Bargaining Agreement").

(<u>Footnote 1 continued</u>):

the following reasons, I grant in part and deny in part
defendants' Motion to Dismiss/Strike.

## SUMMARY OF DECISION

I grant the Motion to Dismiss/Strike as unopposed to
the extent that it seeks to dismiss plaintiff's procedural due
process claim against defendant Chief MacLean because plaintiff
did not respond to Chief MacLean's argument that plaintiff
failed to plead sufficient facts supporting an inference that
defendant Chief MacLean was involved in the decision to
terminate plaintiff's employment without a pre-termination
hearing.

Moreover, I grant the Motion to Dismiss/Strike and
strike paragraph 104 from the Second Amended Complaint as
immaterial because the treatment of other officers and
individuals described in that paragraph does not bear on the
procedural due process claim which it purports to support.

However, I deny the remaining portions of the Motion
to Dismiss/Strike because, as explained more fully below,

---

(Continuation of footnote 1):

       Plaintiff's Memorandum of Law in Opposition to Defendants' Motion
to Dismiss and/or Strike Second Amended Complaint (Document 25)("Plaintiff's
Memorandum") was filed on November 26, 2012, together with the Affidavit of
Plaintiffs Anthony Sube, David W. Benner, and Douglas Perdick (Document 25-1)
("Affidavit of Sube, Benner, and Perdick").

       On December 5, 2012, Defendants' Reply Brief in Support of Motion
to Dismiss and/or Strike Second Amended Complaint (Document 28)("Defendants'
Reply Brief") was filed, together with Exhibit 1, copies of termination and
post-termination documents.

plaintiff's Second Amended Complaint sufficiently alleges claims under the Americans with Disabilities Act ("ADA"),[2] and the Pennsylvania Human Relations Act ("PHRA")[3] for failure-to-accommodate (Counts I and II) and unlawful retaliation (Count IV); and a claim against defendant City of Allentown under 42 U.S.C. § 1983 for violation of plaintiff's right to procedural due process pursuant to the Fourteenth Amendment to the United States Constitution (Count III).

Finally, I deny defendants' request to strike paragraphs 69-84, paragraph 108, and paragraph 111 because such averments, if believed, may show discriminatory animus on the part of Chief MacLean and are not so immaterial or scandalous that they must be stricken.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over plaintiff's pendent state-law claims.  See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly

---

[2]         42 U.S.C. §§ 12101 to 12213.

[3]         Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963.

occurred in Lehigh County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiff initiated this action on September 13, 2011 when he, together with David W. Benner and Douglas Perdick, filed a Complaint asserting claims against defendant City of Allentown and defendant Chief of Police Roger J. MacLean.[4]

On December 12, 2011, defendants filed a motion which sought to sever the claims of plaintiffs Benner and Perdick.[5] Also on December 12, 2011, defendant filed a motion to dismiss the claims asserted in the Complaint.[6]

On January 10, 2012, in response to defendants' first motion to dismiss, plaintiffs Sube, Benner and Perdick filed an Amended Complaint.[7]  Also on January 10, 2012, plaintiffs Sube, Benner and Perdick filed a memorandum of law opposing the motion to sever.[8]

---

[4]      Complaint filed September 13, 2011 (Document 1).

[5]      Defendants' Motion to Sever filed December 12, 2011 (Document 5).

[6]      Defendants' Motion to Dismiss filed December 12, 2011 (Document 6).

[7]      Amended Complaint filed January 10, 2012 (Document 9).

[8]      Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Sever, which memorandum was filed January 10, 2012 (Document 10).

On January 31, 2012, Defendants filed a motion to dismiss the Amended Complaint.[9]  Plaintiffs Sube, Benner and Perdick filed a response to defendant's second motion to dismiss on February 21, 2013.[10]

By Order dated September 26, 2012 and filed September 27, 2012, for the reasons expressed in that Order and its footnotes, I granted defendants' Motion to Sever and dismissed David W. Benner and Douglas Perdick as plaintiffs in this action without prejudice for Mr. Benner and Mr. Perdick to separately re-file their claims against defendants in separate civil actions on or before October 29, 2012.

Moreover, my September 26, 2012 Order dismissed the Amended Complaint without prejudice for plaintiff to file a Second Amended Complaint in this action on or before October 22, 2012.  Finally, I dismissed defendants' motions to dismiss the Complaint and Amended Complaint as moot without prejudice for defendants' to seek dismissal if plaintiff filed a Second Amended Complaint in accordance with that Order.

---

[9]        Defendants' Motion to Dismiss and/or Strike Plaintiffs' Amended Complaint, which motion was filed January 31, 2012 (Document 12).

[10]       Plaintiffs' Response to Defendants' Motion to Dismiss [the Amended Complaint], which response was filed February 21, 2012 (Document 13).

Plaintiff filed his Second Amended Complaint on October 24, 2012.[11]

As noted above, defendants filed the within Motion to Dismiss/Strike on November 13, 2012.  In opposition, Plaintiff's Memorandum was filed on November 26, 2012.  Defendants' Reply Brief was filed on December 5, 2012.

Hence this Opinion.

### STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion requires the

---

[11]        Plaintiff attempted to file the Amended Complaint electronically on October 22, 2012 (Document 19).

Electronic filing of a complaint is not permitted under Rule 5.1.2 of the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania ("Local Civil Rules").  All initial pleadings must be filed in hard copy with all subsequent material filed electronically except as otherwise provided by the Electronic Case Filing Procedures.  E.D.Pa.R.Civ.P. 5.1.2(2)(b).  Specifically, Rule 5.1.2(3)(a) of the Local Civil Rules requires that all complaints be submitted on disk, in PDF format, in addition to a paper format courtesy copy for the court.  The Second Amended Complaint was properly filed by plaintiff on October 24, 2012 (Document 20).

On October 29, 2012, Douglas Perdick and David W. Benner each separately filed a Second Amended Complaint (Documents 18 and 19, respectively) in this action.  Then, on November 1, 2012, Mr. Perdick and Mr. Benner each separately filed a motion (Documents 22 and 21, respectively) seeking an Order directing the Clerk of Court to assign a new, separate case number to Mr. Perdick and Mr. Benner's respective Second Amended Complaints and to waive their case-filing fees.

For the reasons expressed in the Order dated November 1, 2012 and filed November 2, 2012, I struck the Second Amended Complaint of plaintiffs Perdick and Benner and gave each until November 8, 2012 to pursue their claims in separate civil actions.  Additionally, I dismissed their November 1, 2012 motions without prejudice for each of them to pay the applicable case-filing fee or submit an appropriate application for leave to proceed in forma pauperis in their respective civil actions.

court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief".  Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[12]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

---

[12]      The Supreme Court's Opinion in Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in Twombly applies to all civil suits in the federal courts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Fowler, 578 F.3d at 210 (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.  Phillips, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  Fowler, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  Iqbal, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

## FACTS

Based upon the well-pled averments in plaintiff's Second Amended Complaint, construed in the light most favorable to the plaintiff, which I must accept as true under the above standard of review, the pertinent facts are as follows.

Defendant City of Allentown ("Allentown" or "City") employed plaintiff Anthony Sube as a police officer beginning in April 2006.  Defendant Police Chief Roger J. MacLean has offices within City's administrative offices.[13]

---

[13]          Second Amended Complaint, ¶¶ 1-4.

Plaintiff held the position of patrolman.  His immediate supervisor was Sergeant Vargo.  Plaintiff was qualified for the position and had an "above average" work history with the City of Allentown.[14]

On September 22, 2008, plaintiff was injured in the line of duty.  Specifically, he suffered an injury which caused nerve damage to his right index finger and inability to move joints in his right hand.  He was subsequently placed on light duty for six months.[15]  Plaintiff's light duty assignment ended on March 22, 2009.  He continued to work as an Allentown police officer after returning from light duty.[16]

On February 22, 2010 plaintiff requested Assistant Chief Joseph Hanna to change his shift time.  Assistant Chief Hanna informed plaintiff that he would change plaintiff's working hours.  Assistant Chief Hanna discussed plaintiff's request with Captain Warg, and informed Captain Warg that "based upon past practice, he was making a command decision and

---

[14]      Second Amended Complaint, ¶¶ 5-7.

[15]      Id., ¶¶ 8-9, 58.

[16]      Plaintiff does not specifically aver the date on which his light-duty position ended.  However, he avers that he was injured on September 22, 2008 (id., ¶ 8) and that following the injury he worked on light duty for six months (id., ¶ 9).  Therefore, it is reasonable to infer that his light-duty position concluded on March 22, 2009, six months after the date of his injury.  (See id., ¶¶ 8-9.)

changing [Officer] Sube's hours because of [Officer] Sube's injury."[17]

Captain Warg told plaintiff to contact his secretary if plaintiff needed to "call off" for a doctor's appointment or court appearance.[18]

On February 26, 2010, plaintiff called off for his 7:00 a.m. shift because a snowstorm had blocked his driveway. At 9:00 a.m., plaintiff's Workers' Compensation attorney called to inform plaintiff of a mandatory Heart and Lung hearing at Allentown City Hall scheduled for that same day. The attorney stated that plaintiff's attendance would not be an issue, even though he had called off sick from work.[19]

When plaintiff arrived at Allentown City Hall for the hearing, Chief MacLean "glared" at plaintiff. Plaintiff asked whether his attendance at the hearing was an issue because he had called off work that day. Chief MacLean responded, "yes there will be a problem, that's what you get for using a sick day for a f**king snow storm."[20]

---

[17]     Second Amended Complaint, ¶¶ 10-12.

[18]     Id., ¶ 13.

[19]     Id., ¶ 14-16.

[20]     Id., ¶ 17-18.

Chief MacLean holds the Americans with Disabilities Act, and officers seeking accommodation for their disabilities under the ADA, in low esteem.[21]

Following the February 26, 2010 hearing, plaintiff called the Fraternal Order of Police President, who informed plaintiff that he could be written up for reporting to City Hall for the hearing when he had called out sick from his shift.[22]

On April 9, 2010 plaintiff was transferred to the police department's Third Platoon.[23]  Plaintiff asked Captain Warg if his transfer was "retaliation for the February 26, 2010 hearing incident."  Captain Warg responded that he did not have time to supervise plaintiff.[24]

Plaintiff was scheduled to report to the Third Platoon on April 12, 2010.  He informed Sergeant Snyder, by text message and telephone, that he had a Workers' Compensation hearing in

---

[21]      See Second Amended Complaint, ¶¶ 69-84, 111.

Plaintiff included in his Second Amended Complaint excerpts from conversations and text messages between a Lehigh County employee identified as Cori Doughty, and defendant Chief MacLean.  Plaintiff also includes references to a prior court case involving Chief MacLean and a 1985 article from the Morning Call.  The combined effect of plaintiff's inclusions is to aver that defendant Chief MacLean has a negative attitude towards officers seeking accommodation, or otherwise invoking rights, under the ADA. See Id., ¶¶ 69-84, 111.

[22]      Id., ¶ 19.

[23]      Id., ¶ 20-22.  Plaintiff does not aver what the "[T]hird Platoon" is, or how or why being transferred to third platoon could be seen as a form of punishment.  See id.

[24]      Id.

-12-

Pottsville, Pennsylvania, on the same day which conflicted with his shift.[25]

At the April 12, 2010 hearing, Assistant Chief Hanna testified that plaintiff was required to be in a secure room when in the presence of suspects. Plaintiff's Workers' Compensation attorney informed plaintiff that a camera had been placed in the room to monitor plaintiff.[26]

After attending the April 12, 2010 hearing, plaintiff returned to his vehicle and received a voicemail from Sergeant Vargo asking about plaintiff's whereabouts. Plaintiff called Sergeant Vargo and informed him that plaintiff was at the Workers' Compensation hearing. Sergeant Vargo told plaintiff that Assistant Chief Hanna called to determine plaintiff's whereabouts. Plaintiff reiterated that he was at the Workers' Compensation hearing and stated that Assistant Chief Hanna had testified at the same hearing.[27]

After the April 12, 2010 hearing, plaintiff began to be punished and reprimanded.[28] Captain Warg questioned Sergeant Judge about plaintiff's whereabouts "on numerous occasions" and told Sergeant Judge that he wanted plaintiff to be supervised,

---

[25]        Second Amended Complaint, ¶¶ 23-24.

[26]        Id., ¶ 32.

[27]        Id., ¶¶ 26-27.

[28]        Id., ¶ 28.

with plaintiff's door open, at all times.[29]   Sergeant Judge, asked plaintiff, "Who did you piss off?"[30]

Plaintiff states that Sergeant Judge also informed plaintiff that Captain Warg wanted plaintiff to be directly supervised with his door open at all times.[31]

On April 16, 2010, plaintiff received a memorandum indicating that he had been written up for the February 26, 2010 incident.  Plaintiff attended a disciplinary hearing on April 29, 2010.  The panel, composed of defendant Chief MacLean, Assistant Chief Hanna, and another individual identified in the Second Amended Complaint only as "Howells", determined that plaintiff would receive a three-day suspension.[32]

Plaintiff took two weeks off from work after the disciplinary hearing due to "a severe medical condition caused by stress."[33]

Upon plaintiff's return from his time off, he was subjected to harassment by other officers because other officers believed he was being videotaped daily.  Plaintiff states that,

---

[29]     Second Amended Complaint, ¶¶ 30-31.

[30]     Id., ¶ 29.

[31]     Id., ¶¶ 29-31.

[32]     Id., ¶¶ 34-36, 39.

[33]     Id., ¶ 43.

on several occasions, Sergeant Vargo ensured that plaintiff's door was open.[34]

On June 21, 2010, plaintiff's attorney sent a letter informing "the Defendant" of plaintiff's intentions of filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").[35]

On July 2, 2010, plaintiff received a call from "the Defendant" informing him that his employment had been terminated.  Plaintiff had been scheduled to return to his regular position on July 3, 2010.[36]

Plaintiff filed a Charge of Discrimination on July 7, 2010.[37]

---

[34]        Second Amended Complaint, ¶¶ 44-45.

[35]        Id., ¶ 48.

[36]        Id., ¶¶ 49-51.

Plaintiff does not aver that he sought or was given a light-duty position following his three-day suspension and the two-weeks he took off following the April 29, 2010 disciplinary hearing.  In Plaintiff's Memorandum, at page 6, plaintiff states that he was to return to "his full duty position" on July 3, 2010.

However, based upon the averments in the Second Amended Complaint -- because plaintiff specifically avers that the light-duty position he was given following his September 22, 2008 injury was for a period of six months (until March 22, 2009) and he was transferred to Third Platoon effective April 12, 2010 (Second Amended Complaint, ¶¶ 8-9, 23 - it would be reasonable to infer that he was scheduled to return to his pre-Third-Platoon position effective July 3, 2010.

[37]        Id., ¶ 54.

## DISCUSSION

## Contentions of Defendants

In their Motion to Dismiss/Strike, defendants contend that plaintiff has failed to state a failure-to-accommodate disability-discrimination claim under the Americans with Disabilities Act (Count I) and the Pennsylvania Human Relations Act (Count II).  Defendants argue that plaintiff failed to request any accommodation, and that therefore the City of Allentown had no obligation to engage in an interactive process or provide accommodation.

Additionally, defendants argue that plaintiff's claim for unlawful retaliation (Count IV), presumably also under the ADA and PHRA,[38] must be dismissed because plaintiff has failed to plead sufficient facts to state such a claim.

Defendants also contend that plaintiff's claim under 42 U.S.C. § 1983 for violation of procedural due process

---

[38]      Plaintiff alleges, in paragraph 113(a) of the Second Amended Complaint, that his suspension and job termination were done in retaliation by the City of Allentown in violation of the "applicable law prohibiting retaliation."

        In light of plaintiff's contention, in paragraph 110, that "his termination was motivated by the fact that his lawyer sent a letter to the Defendants, notifying the Defendants that [Mr.] Sube was about to file a Charge of Discrimination with the EEOC," and plaintiff's statement, in paragraph 52, that he "believes, and therefore avers, that the Defendants subjected him to retaliation for seeking accommodations for his health problems," I will address plaintiff's claim as having been made for retaliation under the ADA and PHRA.

        Additionally, defendants address plaintiff's claim for retaliation under the ADA and PHRA in Defendants Brief at page 15, and plaintiff does not correct that assumption in Plaintiff's Memorandum.

-16-

(Count III) must be dismissed because the Collective Bargaining Agreement provided effective grievance procedures.  Moreover, defendants argue that even if plaintiff has stated a claim under § 1983 for violation of procedural due process against the City of Allentown, the claim must be dismissed against Chief MacLean because plaintiff has not alleged Chief MacLean played an affirmative role in the termination of his position.

### Attached Documents

The parties have attached various documents to their moving papers upon which they rely in support of their respective positions.  Initially I address whether these documents may properly be considered in disposing of the Motion to Dismiss/Strike.

Defendants attach, as Exhibit 1 to Defendants' Motion, the Collective Bargaining Agreement between the City of Allentown and Fraternal Order of Police referred to in the Second Amended Complaint.  Plaintiff attaches the Affidavit of Anthony Sube, David W. Benner, and Douglas Perdick, to Plain-tiff's Memorandum.[39]  Finally, Defendants attach, as Exhibit 1,

---

[39]    Plaintiff states, in Plaintiff's Memorandum at pages 18 and 20, that he has attached "an Affidavit, containing emails, indicating that his [Fraternal Order of Police] representative had no interest in protecting [his] interest under the [Collective Bargaining Agreement]" in addition to a copy of plaintiff's EEOC Charge.  However, only the Affidavit has actually been attached to Plaintiff's Memorandum.

The Affidavit states that plaintiffs Sube, Benner and Perdict encountered opposition from their union representative in bringing grievances against the City of Allentown.

to Defendants' Reply Brief, copies of documents concerning
plaintiff's termination and post-termination grievance.

As noted in the Standard of Review section, above,
when ruling on a motion to dismiss, the court relies on the
complaint, attached exhibits, and matters of public record,
including other judicial proceedings.  Sands v. McCormick,
502 F.3d 263, 268 (3d Cir. 2008).

Generally, matters outside the pleading must be
excluded or the motion to dismiss must be treated as a motion
for summary judgment under Rule 56.  See Fed.R.Civ.P. 12(d).
However, matters "integral to or explicitly relied upon in
[plaintiff's] complaint," may be properly considered in a motion
to dismiss.  See U.S. Express Lines, Ltd. v. Higgins,
281 F.3d 383, 388 (3d Cir. 2002).

For example, in In re Burlington Coat Factory
Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997), the
United States Court of Appeals for the Third Circuit held that
the district court properly considered the 1994 Annual Report
attached to defendant's Rule 12(b)(6) motion where plaintiff
unambiguously referenced full-year cost data for 1994 in their
complaint and the 1994 Annual Report was the source of that
data.  In Miller v. Clinton County, 544 F.3d 542, 550 (3d Cir.
2008), the Third Circuit held that the district court could

properly consider an undisputedly accurate letter referenced throughout the complaint when disposing of a Rule 12(b) motion.

The Collective Bargaining Agreement attached by defendants as Exhibit 1 to Defendants' Brief may be considered because it is explicitly relied upon in plaintiff's Second Amended Complaint.  See In re Burlington Coat Factory, 114 F.3d at 1426, where the Third Circuit Court of Appeals stated, "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them."  Id.

Here, plaintiff has alleged "that he had acquired a property interest in his job, having worked as a City employee for years prior to his suspension in a position protected pursuant to a collective bargaining agreement" and that he "was subject to a collective bargaining agreement, which precludes the suspension or termination of an employee without just cause."[40]

The Collective Bargaining Agreement may be considered because it is referred to and relied upon by plaintiff.  However, because Pennsylvania has recognized that police officers possess a property interest in continued employment, see Balliett v. City of Allentown, 1994 U.S.Dist. LEXIS 18216,

---

[40]        Second Amended Complaint, ¶¶ 94, 97.

*21-22 (E.D.Pa. Dec. 22, 1994)(Troutman, S.J.), and procedural due process requires a pre-suspension and pre-termination hearing regardless of grievance procedures, see Schmidt v. Creedon, 639 F.3d 587 (3d Cir. 2011), the Substance of the Collective Bargaining Agreement is not dispositive of the Motion to Dismiss/Strike.

The affidavit attached to Plaintiff's Brief, in opposition to a pending motion to dismiss, cannot be considered. An affidavit constitutes a matter outside of the pleading. See Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1989). Further-more, it is neither integral to plaintiff's complaint, nor explicitly relied upon and, therefore, may not be considered for the Motion to Dismiss/Strike. See U.S. Express Lines, Ltd., 281 F.3d at 388.

Finally, defendants have attached post-termination grievance records for plaintiff as Exhibit 1 to Defendants' Reply Brief. Because Schmidt makes clear that a pre-termination hearing is necessary for procedural due process, the availability of any post-termination grievance procedures does not affect plaintiff's § 1983 claim for violation of procedural due process. Therefore, I need not address defendants' attachment of grievance records as Exhibit 1 to Defendants' Reply Brief.

## Disability Discrimination

In Counts I and II of his Second Amended Complaint, plaintiff asserts disability discrimination claims pursuant to the ADEA and PHRA.  Specifically, plaintiff avers that he "suffers from nerve damage on his right index finger and an [in]ability to move joints in his right hand" and asserts a failure-to-accommodate claim against defendant City of Allentown.[41]

Defendants contend that plaintiff's failure-to-accommodate claim must be dismissed because plaintiff "has not indicated what, if any, accommodation he requested...prior to his termination which was ultimately denied or in what ways Allentown actually perpetrated any discrimination."[42]

In Plaintiff's Memorandum, after stating various legal rules related to disability discrimination claims,[43] plaintiff addresses defendant's motion to dismiss and seeks to explain how his Second Amended Complaint states a disability discrimination claim.  Because plaintiff's discussion of defendants' motion and his own pleading is quite brief, I quote it in its entirety:

---

[41]     Second Amended Complaint, ¶¶ 58-66.

[42]     Defendants' Brief at page 14.  Defendants also contend that plaintiff fails to allege that he was physically able to perform his duties as a police officer as of the date of his termination.  (Id.)  However, plaintiff does aver that he would have been capable of performing the essential functions of his job with a reasonable accommodation.  Second Amended Complaint, ¶ 62.

[43]     See Plaintiff's Memorandum at pages 10-15.

5.   Lack of Any Accommodation for Sube

Defendants argue that Plaintiff did not allege that he ever requested a specific accommodation or any other assistance with respect to her disability.  Defendants also argue that the complaint does not allege a failure on the part of the employer to engage in the requisite interactive process[.]  As a result, Defendants argue that Plaintiff failed to state a plausible claim of discrimination and therefore under Twombly and Iqbal, any claims under the ADA and PHRA must be dismissed.  *The Second Amended Complaint, however, in paragraph 63, specifically avers that the Defendants refused to engage in an interactive process.* [44]

Plaintiff's argument in opposition to defendants' motion to dismiss his disability discrimination claims does not refer to any other paragraph in his 113-paragraph Second Amended Complaint or otherwise explain further how the facts alleged in the Second Amended Complaint are sufficient to state the failure-to-accommodate claim which plaintiff is attempting to advance against the City.[45]

Both the Americans with Disabilities Act and the Pennsylvania Human Relations Act prohibit certain entities from discriminating against disabled, otherwise qualified individuals in the hiring and firing of employees.  42 U.S.C. § 12112(a); Act of October 27, 1955, P.L. 744, § 5(a), as amended, 43 P.S. § 955(a).  The same legal standard applies equally to the ADA and PHRA.  Kelly v. Drexel University, 94 F.3d 102, 105

---

[44]        Plaintiff's Memorandum at pages 15-16 (emphasis added).

[45]        See Id. at pages 10-16.

(3d Cir. 1996).  Therefore, the disability discrimination analysis encompasses plaintiff's failure to accommodate claim under both the ADA and the PHRA.

Pursuant to the ADA, an employer must reasonably accommodate an employee's disability.  Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751, 761 (3d Cir. 2004).  Moreover, an employer's failure to engage, in good faith, in an interactive process to determine whether an accommodation can reasonably be made for a disabled employee constitutes prohibited discrimination.  Taylor v. Phoenixville School District, 184 F.3d 296, 311-312 (3d Cir. 1999).

As noted above, plaintiff asserts a failure-to-accommodate claim against defendant City of Allentown based upon this City's alleged failure to engage in an interactive process to accommodate the nerve damage and joint problems in plain-tiff's right hand.

The United States Court of Appeals for the Third Circuit has stated that

> [a]n employee can demonstrate that an employer breached its duty to provide reasonable accommo-dations because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

-23-

Colwell v. Rite Aid Corporation, 602 F.3d 495, 504 (3d Cir.
2010)(internal quotation marks omitted).

Paragraph 63 of the Second Amended Complaint -- the
only paragraph plaintiff refers to in his response to defen-
dants' attack on his failure-to-accommodate claim -- states, in
pertinent part:

> Defendant[s] did not engage in any meaningful
> interactive process, nor did they grant [plaintiff's]
> request for additional accommodations in the form of
> leave, job transfers, or disability pensions....[46]

Plaintiff, who presumably is aware of what particular
accommodations he sought from the City, to whom he expressed his
desire for such accommodations, and when he sought such accom-
modations,[47] did not aver those facts in the Second Amended
Complaint.

Nonetheless, the averments in plaintiff's Second
Amended Complaint support the reasonable inference that
(A) defendant City's police department was aware of plaintiff's
right-hand nerve damage and joint problems; (B) plaintiff
requested additional leave, a job transfer (within the Allentown
Police Department, or to another department within the City),
and a disability pension from the City; and (C) defendant City

---

[46]        Second Amended Complaint, ¶ 63.

[47]        Indeed, plaintiff specifically avers that he requested a shift
change from Assistant Chief Hanna on February 22, 2010 and that the request
was granted.  Id., ¶¶ 10-12.

-24-

failed to engage plaintiff in a dialogue concerning the physical or medical basis for plaintiff's requests and whether plaintiff's limitations could be reasonably accommodated without creating a hardship on the City.

Accordingly, I deny the Motion to Dismiss/Strike to the extent that it seeks dismissal of plaintiff's failure-to-accommodate claims under the ADA and PHRA (Counts I and II, respectively).

### Unlawful Retaliation

Defendants contend that, to the extent that plaintiff is asserting his retaliation claim (Count III) in the Second Amended Complaint pursuant to the ADA and PHRA, he has not sufficiently stated such a claim.  Specifically, defendants contend that plaintiff fails to state a claim because he alleges that he was retaliated against for using a sick day during a snow storm, not for engaging in any ADA-protected activity.[48]

In response, plaintiff recites legal rules applicable to retaliation claims, and then, without further explanation or any reference to averments in the Second Amended Complaint, simply asserts that "[Mr.] Sube's Second Amended Complaint clearly establishes that he was retaliated against unlawfully."[49]

---

[48]       Defendants' Brief at page 15.

[49]       Plaintiff's Memorandum at page 17.

The anti-retaliation provision of the ADA provides that

> [n]o person shall discriminate against any individual
> because such individual has opposed any act or
> practice made unlawful by this chapter or because such
> individual made a charge, testified, assisted, or
> participated in any manner in an investigation,
> proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

Retaliation claims under the ADA and the PHRA are analyzed in the same manner. Rinehimer v. Cemcolift, 292 F.3d 375, 382 (3d Cir. 2002).[50]

To state a claim for retaliation under the ADA, a plaintiff must show that (1) plaintiff engaged in an ADA-protected activity; (2) defendant took an adverse employment action against plaintiff either at the same time or after plaintiff's protected activity; and (3) a causal relationship exists between plaintiff's protected activity and defendant's adverse employment action. Aman v. Cort Furniture Rental Corporation, 85 F.3d 1074, 1085 (3d Cir. 1996).  Here, plaintiff has sufficiently pled his retaliation claim under the ADA and PHRA.

---

[50]        The Third Circuit has noted at "[t]he ADA, ADEA, and PHRA contain
nearly identical anti-retaliation provisions that prohibit discrimination
against any individual because 'such individual' has engaged in protected
activity.  42 U.S.C. § 12203(a)[(ADA)]; 29 U.S.C. § 623(d)[(ADEA)];
43 Pa. Cons.Stat. § 955(d)[(PHRA)]."  Fogelman v. Mercy Hospital, Inc.,
283 F.3d 561, 564 (3d Cir. 2002).

In determining whether a specific complaint
constitutes protected activity, courts consider the content of
the complaint, rather than its form.  Barber v. CSX Distribution
Services, 68 F.3d 694, 702 (3d Cir. 1995).  Accordingly, a
complaint need not be written or formal.  Id.  However, general
claims of unfair treatment are not protected under the anti-
retaliation provisions of the ADA and PHRA.  See id.

Here, plaintiff alleges that on June 21, 2010 his
attorney sent a letter to defendant City stating that plaintiff
was in the process of filing a charge of discrimination with the
United States Equal Employment Opportunity Commission.[51]
Although plaintiff does not attach a copy of the June 21, 2010
letter, it is reasonable to infer that the June 21, 2010 letter
referred to disability discrimination as the basis for
plaintiff's EEOC charge.  Accordingly, plaintiff has
sufficiently alleged facts supporting a reasonable inference
that he engaged in ADA-protected activity.

Plaintiff further alleges that on July 2, 2010 (eleven
days after the protected conduct) he was informed that his
employment with the City was terminated.[52]  Plaintiff has
sufficiently alleged that he engaged in ADA-protected conduct
(the June 21, 2010 letter) and that he suffered an adverse

---

[51]        Second Amended Complaint, ¶¶ 48, 106, 110.

[52]        See Id., ¶¶ 50-51.

-27-

employment action (termination) within a sufficiently short
period of time (eleven days) to state a plausible claim of
retaliation.  Therefore, I deny the Motion to Dismiss/Strike to
the extent it seeks to dismiss plaintiff's retaliation claim
(Count IV) from the Second Amended Complaint.

### Procedural Due Process

In Count III of the Second Amended Complaint,
plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against
both defendant City and Defendant Chief MacLean alleging that
defendants violated plaintiff's right to procedural due process
under the Fourteenth Amendment to the United States
Constitution.[53]

Based upon the averments asserted in Count III, it
appears that plaintiff was alleging due process violations based
upon both his three-day suspension instituted on April 29, 2010,
and the termination of his employment on July 2, 2010.[54]
Defendants, understandably,[55] took plaintiff to be asserting both
suspension- and termination-based procedural due process

---

[53]        Second Amended Complaint at pages 14-15.

[54]        Id., ¶¶ 91 ("Sube...was unlawfully suspended and then unlawfully
terminated by the Defendants."), 93-94 ("Sube was suspended and then
ultimately terminated by the Police Department without any prior action being
taken by City Council....  Sube...had acquired a property interest in his
job, having worked as a City employee for years prior to his suspension in a
position protected pursuant to a collective bargaining agreement.); and 96-97
("At the time of his suspension and at the time of his termination, Sube was
not given any type of due process [by] Defendants.").

[55]        See id.

violations and argued, in Defendants' Brief, that plaintiff failed to sufficiently plead either violation.[56]

In Plaintiff's Memorandum, he disputes defendants' argument that plaintiff was not entitled to a hearing before the Allentown City Council because his suspension was for less than ten days.[57]  Specifically, plaintiff asserts that the argument "is so patently wrong it is simply breathtaking.  [Mr.] Sube is claiming that his termination was done in violation of his due process rights....  His union did absolutely nothing to fight [his] termination."[58]

Although, as described above, defendants were certainly reasonable in their assessment that plaintiff's Second Amended Complaint attempted to assert a procedural due process claim based upon plaintiff's three-day suspension,[59] it is clear from Plaintiff's Memorandum that plaintiff is not pursuing such a claim.  Accordingly, I will consider here only that procedural due process claim which plaintiff is pursuing -- namely, plaintiff's procedural due process claim concerning the termination of his employment on July 2, 2010.

---

[56]      See Defendants' Brief at pages 16-20.

[57]      Plaintiff's Memorandum at page 20.

[58]      Id. at page 20.

[59]      See footnote 54, supra.

With respect to that claim, plaintiff alleges that his right to procedural due process under the Fourteenth Amendment was violated when his employment as an Officer with the Allentown Police Department was terminated without a pre-termination hearing.  As noted above, plaintiff asserts his procedural due process claim against both defendant City and defendant Chief MacLean.

Defendants contend that plaintiff's procedural due process claim must be dismissed pursuant to two decisions from the United States Court of Appeals for the Third Circuit -- Dykes v. Southeastern Pennsylvania Transportation Authority, 68 F.3d 1564, 1565 (3d Cir. 1995),[60] and Jackson v. Temple University, 721 F.2d 931, 933 (3d Cir. 1983) -- because the collective bargaining agreement provided adequate procedures by which plaintiff could grieve his termination, and plaintiff does not aver facts suggesting that the City or any of its officers inappropriately interfered with the grievance process.[61]

However, as plaintiff correctly notes,[62] the Third Circuit subsequently addressed the issue in Schmidt v. Creedon, 639 F.3d 587, 597 (3d Cir. 2011).  In Schmidt, the Third Circuit

---

[60]       In Dykes, the Third Circuit stated that "where an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled."  68 F.3d at 1565.

[61]       Defendants' Brief at pages 16-17.

[62]       Plaintiff's Memorandum at page 18.

clarified that a pre-termination hearing is necessary in order to afford due process.

The Schmidt court explained that "[t]he Supreme Court's decision in Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 504, clearly established that, absent extraordinary circumstances, certain employees were entitled to a hearing prior to termination." Schmidt, 639 F.3d at 598.  The Third Circuit went on to state that "[c]ases from this Court [have] made clear that this rule applied to police officers." Id. (citing Gniotek v. City of Philadelphia, 808 F.2d 241, 244 (3d Cir. 1986)).

The Third Circuit expressly held that "absent extraordinary circumstances, due process requires notice and a hearing prior to suspension without pay, even where union grievance procedures, after the fact, fully compensate erroneously suspended employees." Schmidt, 639 F.3d at 597.

Here, plaintiff alleges that his employment as an Officer with the Allentown Police Department was terminated and that he did not receive a pre-termination hearing of any kind.[63]

---

[63]      The pre-suspension or pre-termination hearing need not be "elaborate". Loudermill, 470 U.S. at 545, 105 S.Ct. at 1495, 84 L.Ed.2d at 506.  "An employee is entitled to 'notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'"  Schmidt, 639 F.3d at 599 (citing Loudermill, supra). Here, plaintiff avers that he simply received a phone call on July 2, 2010 informing him that his employment with the City as a police officer was terminated.

The Third Circuit's decision in <u>Schmidt</u> renders defendant's argument concerning available grievance procedures unavailing. Due process entitled plaintiff to a pre-termination hearing. <u>See</u> <u>Schmidt</u>, 639 F.3d at 596.

Although defendant's argument that plaintiff fails to state a due process claim because of the grievance procedures available under the collective bargaining agreement does not warrant dismissal, defendants also argue that plaintiff's procedural due process claim against defendant MacLean should be dismissed because plaintiff does not aver any facts demonstrating, or supporting a reasonable inference, that defendant MacLean was personally involved in denying plaintiff a pre-termination hearing.[64]

Rule 7.1(c) of the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania provides that "any party opposing [a] motion shall serve a brief in opposition, together with such answer or other response which may be appropriate". Accordingly, a court may treat a motion, or portion of a motion, as unopposed if the non-moving party fails to respond to the movant's arguments. See <u>Jackson v. J. Lewis Crozer Library</u>, 2007 U.S.Dist. LEXIS 61582, *18 (E.D.Pa. Aug. 22, 2007)(Stengel, J.).

---

[64]       Defendants' Brief at pages 19-20.

Here, although plaintiff filed a memorandum of law in opposition to defendants' motion to dismiss/strike, plaintiff does not address defendants' contention that plaintiff's procedural due process claim against defendant MacLean should be dismissed based upon the absence of any alleged facts demonstrating personal involvement by defendant MacLean in denying plaintiff a pre-termination hearing.[65]

Defendants' Reply Brief expressly notes that plaintiff failed to respond to defendants' argument concerning the procedural due process claim against defendant MacLean.  As of the date of this Opinion and accompanying Order, plaintiff has not sought leave to file a sur-reply brief, or supplemented his response to defendants' motion to dismiss in order to explain how he has, in fact, sufficiently pled a procedural due process claim against defendant Chief MacLean.

Therefore, because defendants contend, and plaintiff does not dispute, that the Second Amended Complaint fails to sufficiently plead a procedural due process claim against individual defendant MacLean, I grant defendants' motion to dismiss/strike as unopposed to the extend it seeks to dismiss plaintiff's procedural due process claim against defendant MacLean from Count III of the Second Amended Complaint.  See Jackson, 2007 U.S.Dist. LEXIS 61582, at *18.

---

[65]     See Plaintiff's Memorandum at pages 17-20 (responding to defendant's motion concerning procedural due process).

-33-

## Motion to Strike

Defendants contend that paragraphs 69-84, paragraph 104, paragraph 108, and paragraph 111 should be stricken from the Second Amended Complaint because they are impertinent, immaterial and scandalous.  Specifically, defendants seek to strike "the Doughty files," references to a civil action brought by Chief MacLean's in 1987, references to a Morning Call newspaper article from 1985, a list of various ways the City of Allentown has dealt with the disabilities and discipline of police officers, and an excerpt from Wikipedia.

Under Federal Rule of Civil Procedure 12(f) "redundant, immaterial, impertinent or scandalous" material may be stricken.  While generally not favored by courts, when the allegations are so unrelated to plaintiff's claims as to be "unworthy of any consideration" a motion to strike pursuant to Rule 12(f) is appropriate.  In re Catanella and E.F. Hutton and Co., 583 F.Supp. 1388, 1400 (E.D.Pa. 1984)(Giles, J.).

Content is immaterial when it "has no essential or important relationship to the claim for relief."  Donnelly v. Commonwealth Financial Systems, 2008 U.S.Dist. LEXIS 28604 (M.D.Pa.  Mar. 20, 2008)(citing Delaware Health Care, Inc. v. MCD Holding Co., 893 F.Supp. 1279, 1291-92 (D.Del. 1995)).  Content is impertinent when it does not pertain to the issues raised in the complaint. Id. (citing Cech v. Crescent Hills Coal

<u>Co.</u>, 2002 U.S.Dist. LEXIS 15731, *117 (W.D.Pa. July 25, 2002)).
Scandalous material "improperly casts a derogatory light on
someone, most typically on a party to the action." <u>Id</u>. (citing
<u>Carone v. Whalen</u>, 121 F.R.D. 231, 233 (M.D.Pa. 1988)).

      "The standard for striking a complaint or a portion of
it is strict, and 'only allegations that are so unrelated to the
plaintiffs' claims as to be unworthy of any consideration should
be stricken.'" <u>Steak Umm Co., LLC v. Steak 'Em Up, Inc.</u>,
2009 U.S.Dist. LEXIS 101357, *4 (E.D.Pa. Oct. 29, 2009)(Stengel,
J.)(citing <u>Johnson v. Anhorn</u>, 334 F.Supp.2d 802, 809 (E.D.Pa.
2004)(Brody, J.)).

      Defendants seek to strike paragraphs 69-84 of the
Second Amended Complaint which plaintiff describes as the
contents of "the Doughty files" or events mentioned therein, as
well as paragraph 111.  Specifically, paragraphs 79-80 refer to
defendant MacLean's 1987 lawsuit against the City of Allentown,
and paragraphs 82-84 refer to a 1985 Morning Call article in
which defendant MacLean is mentioned.  Paragraph 111 states:
"[Mr.] Sube believes, and therefore avers, that the Doughty
files reveal a distinct proclivity on the part of the Defendant
Chief [MacLean] to retaliate against officers who need to take
medical leave."

      Defendants argue that plaintiff has included the
"Doughty file" paragraphs merely to cast a derogatory light on

-35-

defendants.[66]  Plaintiff contends that these paragraphs demonstrate that Chief MacLean "is biased toward officers who he believes are claiming to have injuries or disabilities to get transfers or better work assignments" and that bias is relevant to his treatment of plaintiff.[67]

While information purporting to show Chief MacLean's personal opinions concerning the ADA and those who seek its protection would by no means be dispositive in this action, I do not believe that the content of paragraphs 69-84 and 111 is so immaterial or scandalous that it must be stricken.

Rather, as plaintiff points out, such content – taken as true for purposes of a motion to dismiss only -- may show discriminatory animus.  See, e.g., Hurley v. The Atlantic City Police Department, 1999 U.S.App. LEXIS 4582 (3d Cir. March 18, 1999)(allowing other women to testify as to their own experiences within the police department in support of plaintiff's gender discrimination claim).

Because paragraphs 69-84 and 111, when viewed comprehensively may be relevant to demonstrating Chief MacLean's negative view of the ADA and officers seeking accommodation thereunder, they need not be stricken.  See River Road Development Corp. v. Carlson Corporation - Northeast,

---

[66]        Defendants' Brief at page 21.

[67]        Plaintiff's Memorandum at page 22-23.

-36-

1990 U.S.Dist. LEXIS 6201, *22-23 (E.D.Pa. May 23, 1990)
(VanArtsdalen, S.J.).

Accordingly, I deny defendants motion to strike
paragraphs 69-84 and paragraph 111 from the Second Amended
Complaint.

Defendants have also requested that paragraph 104 be
stricken.  Defendants point out in Defendants' Reply Brief that
while plaintiff has argued that the content of paragraph 104 is
relevant as comparator, or "me too," evidence and should not be
struck because it can be used to demonstrate a discriminatory
animus, paragraph 104 appears in Count III for violation of
procedural due process.

In the Second Amended Complaint, plaintiff identifies
paragraph 104 as demonstrating the lack of policy or practice of
suspension or termination:

> 104. Defendant denied the Plaintiff due process,
> denied him a hearing, and denied him a disability
> pension, for the 'crime' of getting injured while
> subduing a suspect.  The Defendant claimed that
> these actions taken against the Plaintiff were
> all a result of departmental protocol and policy.
> As the examples below reveal, however, this
> 'protocol and policy' does not exist when it
> comes to the wrongdoing of certain officers who
> are more in a 'favored status'.  The following
> examples attest to this double standard....

Plaintiff then proceeds to provide twenty-nine purported
examples of other officers whom plaintiff contends were treated
more favorably than he.  Each of those examples is two to four

-37-

lines long, and purports to identify police officers who violated rules, regulations, or protocol, or otherwise did something wrong, and nonetheless received pensions; who were not suspended or terminated; who quit; or who were given a hearing before the city council.[68]

However, paragraph 104 appears in the portion of the Second Amended Complaint in which plaintiff lays out his claim for procedural due process.

Plaintiff argues that paragraph 104 is relevant by citing employment discrimination cases deciding disparate treatment and hostile work environment claims.[69]  However, as plaintiff has not pled an employment discrimination claim based on a theory of either disparate treatment claim or hostile work environment, and comparator evidence is irrelevant to plaintiff's procedural due process claim, I strike paragraph 104 as immaterial to plaintiff's claims.

Finally, Defendants contend that paragraph 108, in which plaintiff quotes from the Wikipedia explanation of the meaning of Joseph Heller's Catch-22, should be stricken.  While this content is arguably immaterial, it does not prejudice

---

[68]        See Second Amended Complaint, ¶ 104a.-cc.

[69]        See Plaintiff's Memorandum at page 23 (citing Aman v. Cort Furniture Rental, 85 F.3d 1074 (3d Cir. 1996); Glass v. Philadelphia Electric Co., 34 F.3d 188 (3d Cir. 1994); Hurley, 1999 U.S.App. LEXIS 4582; Quarantino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995); Rifkinson v. CBS Inc., 1997 U.S.Dist. LEXIS 15865 (S.D.N.Y. Oct. 14, 1997)).

either defendant.  As such, I deny defendants' request to strike
paragraph 108.

## CONCLUSION

For the reasons expressed above, I grant in part and
deny in part the Motion to Dismiss/Strike.

Specifically, I grant the Motion to Dismiss/Strike as
unopposed to the extent that it seeks to dismiss plaintiff's
procedural due process claim against defendant Chief MacLean
because plaintiff did not respond to defendants' argument that
plaintiff failed to plead sufficient facts supporting an
inference that defendant Chief MacLean was involved in the
decision to terminate plaintiff's employment without a pre-
termination hearing.

Moreover, I grant the Motion to Dismiss/Strike and
strike paragraph 104 from the Second Amended Complaint as
immaterial because the treatment of other officers and
individuals described in that paragraph does not bear on the
procedural due process claim which it purports to support.

However, I deny the remaining portions of the Motion
to Dismiss/Strike because, as explained more fully below,
plaintiff' Second Amended Complaint sufficiently alleges claims
under the Americans with Disabilities Act, and the Pennsylvania
Human Relations Act for failure-to-accommodate (Counts I and II)
and unlawful retaliation (Count IV); and a claim against

-39-

defendant City of Allentown under 42 U.S.C. § 1983 for violation of plaintiff's right to procedural due process pursuant to the Fourteenth Amendment to the United States Constitution (Count III).

Finally, I deny defendants' request to strike paragraphs 69-84, paragraph 108, and paragraph 111 because such averments, if believed, may show discriminatory animus on the part of defendant Chief MacLean and is not so immaterial or scandalous that it must be stricken.